UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

ROBERT BANUSHI,

                    *Plaintiff*,

         - against –

THE CITY OF NEW YORK, POLICE OFFICER
ALVIN L. PALMER, and POLICE OFFICER
EQUASHIA ALLEN,

                    *Defendants*.

----------------------------------------X

NOT FOR PRINT OR
ELECTRONIC PUBLICATION

**MEMORANDUM & ORDER**

08-CV-2937 (KAM) (JO)

**MATSUMOTO**, United States District Judge:

        Plaintiff Robert Banushi ("plaintiff" or "Banushi")

brings this action against the City of New York (the "City"),

Officer Alvin L. Palmer ("Officer Palmer") of the New York City

Police Department ("NYPD") and NYPD Officer Equashia Allen

("Officer Allen") (together, "defendants"), alleging federal

civil rights claims pursuant to 42 U.S.C. § 1983 and various

state law tort claims, all arising from plaintiff's allegedly

unlawful arrest, confinement, and prosecution.  Presently before

the court is defendants' motion for summary judgment, pursuant

to Federal Rule of Civil Procedure 56, seeking dismissal of

plaintiff's action[1] and defendants' objection to Magistrate Judge

---

[1]    The parties have submitted the following memoranda and supporting
documents in connection with the instant motion:  ECF Nos. 41, Defendants'
Rule 56.1 Statement ("Def. 56.1 Stmt."); 40, Declaration of Caroline Chen in
Support of Defendants' Motion for Summary Judgment ("Chen Decl."); 42,
Affidavit of Equashia Allen in Support of Defendants' Motion for Summary
Judgment ("Allen Aff."); 43, Affidavit of Alvin Palmer in Support of
Defendants' Motion for Summary Judgment ("Palmer Aff."), 44, Defendants'
Memorandum of Law ("Def. Mem."); 46, Declaration of Anthony Emengo in

Orenstein's discovery order which imposed discovery sanctions upon defendants.[2] For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part, and the objections to Judge Orenstein's discovery order are overruled.

## FACTUAL BACKGROUND

The following undisputed facts are taken from the parties' submissions on the instant motion, including the complaint, depositions, affidavits, exhibits, and statements pursuant to Local Civil Rule 56.1. The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in a light most favorable to the nonmoving plaintiff. Disputes are noted herein.

On December 14, 2007 at around 4:10 p.m., NYPD Officers Palmer and Allen were on patrol in plainclothes at the Metropolitan Transit Authority ("MTA") Lorimer Street Station

---

Opposition to Defendants' Motion for Summary Judgment ("Emengo Decl."); 47, Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Stmt."); 45, Affidavit of Robert Banushi in Opposition to Defendants' Motion for Summary Judgment ("Banushi Aff."); 48, Plaintiff's Memorandum of Law ("Pl. Mem."); 49, Defendants' Reply Memorandum of Law ("Def. Reply Mem.").

[2] The parties have submitted the following letter motions in connection with defendants' motion to overrule the discovery order: ECF Nos. 30, Defendants' letter motion dated 9/9/09 ("Def. 9/9/09 Ltr."); 32, Plaintiff's letter opposition dated 6/29/09 and filed on 9/15/09 ("Pl. 9/15/09 Ltr."); 33, Plaintiff's supplemental letter opposition dated 10/7/09 ("Pl. 10/7/09 Ltr."); 34, Defendants' letter reply dated 10/16/09 ("Def. 10/16/09 Ltr.").

for the L subway line.  (Def. 56.1 ¶¶ 2-4.)  The Lorimer Street

Station has a mezzanine level where the subway turnstiles are

located, and then two stairwells at opposite ends of the

mezzanine leading down to the subway platform where the trains

arrive.  (Emengo Decl. Ex. B.)  Directly across from the

turnstiles is a brick wall.  (Id.)  Around this time, plaintiff

entered the Lorimer Street Station alone by swiping a metro fare

card.  (Def. 56.1 ¶ 5-6, Chen Decl. Ex. D at 81.)  At the time

plaintiff entered the Lorimer Street Station he was alone, and

his wife, Vjollca Banushi, was not with plaintiff.  (Def. 56.1

¶¶ 12-13.)  The parties' factual accounts here diverge.

According to Officer Palmer, at the time plaintiff

entered the turnstile, Officer Palmer was standing with his

partner, Officer Allen, on the fifth or sixth step of the

stairwell leading down from the turnstile mezzanine to the

subway platform.  (Def. 56.1 ¶ 5; Chen Decl. Ex. R at 38, 50;

Emengo Decl. Ex. C at 14-15, Ex. D at 47.)  Officer Palmer

testified that from that vantage point, he observed plaintiff

enter the subway station and further observed a red light appear

on the turnstile when plaintiff swiped his fare card.  (Def.

56.1 ¶¶ 5, 7, 8.)  Based upon Officer Palmer's training and

experience, he testified that he knew that this red light could

indicate that a disability fare card had been used.  (Def. 56.1

¶¶ 5, 7, 8.)  After observing plaintiff swipe the fare card,

3

Officer Palmer testified that he approached plaintiff and asked
him what type of fare card he had used and who it belonged to.
(Chen Decl. Ex. R.)  According to Officer Palmer, plaintiff then
acknowledged that he had used his wife's disability fare card.
(Id.)

        Meanwhile, plaintiff claims that he and Officer Palmer
did not meet on the mezzanine, and instead claims that he was
already through the turnstile and waiting on the subway platform
when Officer Palmer first saw him.  (Pl. 56.1 ¶ 5.)
Specifically, plaintiff asserts that he was alone when he swiped
his fare card and proceeded down the stairs to the subway
platform without being stopped.  (Chen Decl. Ex. D at 104.)
Plaintiff testified that he had "just missed one train," and was
then waiting alone on the subway platform for a period of time
during which "nobody was around."  (Id.)  According to
plaintiff, ten minutes later two police officers in plainclothes
approached him, showed him their identification and asked
plaintiff to likewise provide identification.  (Id. at 104-05.)
Plaintiff testified that as he opened his wallet to show the
defendants his identification, the officers saw the disability
card that plaintiff was carrying in his wallet, asked him to
give it to them, and then arrested him.  (Id. 105-06.)

        Despite their contradictory versions of the
immediately preceding events, the parties do not dispute that at

4

the time of his arrest, plaintiff had on his person three MTA
fare cards, including one disability fare card and two regular
priced fare cards, and that Officer Palmer obtained these fare
cards from plaintiff. (Def. 56.1 ¶¶ 10, 11, 28; Pl. 56.1 ¶¶ 10,
11, 28.) Assisted by Officer Allen, Officer Palmer then
arrested plaintiff for using a subway disability fare card
belonging to another, placed him in handcuffs, and transported
him to a local police station.[3] (Id. ¶¶ 15, 19.) Plaintiff
testified that he suffered no physical injuries when he was
arrested. (Def. 56.1 ¶ 42, Chen Decl. Ex. D at 162.) The
arrest paperwork completed at the time of plaintiff's arrest
incorrectly stated that plaintiff is not an American citizen and
lists his country of origin as Albania. (See Emengo Decl. Ex.
G.)

Following his arrest, plaintiff was charged with one
count of Theft of Services pursuant to New York Penal Law
Section 165.15(3).[4] (Id. ¶ 21.) On December 15, 2007, plaintiff

---

[3]     Defendants assert that Banushi was transported to Transit District 33.
(Def. 56.1 ¶ 19.) Plaintiff asserts that he was transported to the 93rd
precinct. (Pl. 56.1 ¶ 19.) However, the location Banushi was transported to
is immaterial to the instant motion.

[4]     New York Penal Law Section 165.15(3) provides, in pertinent part, that
a "person is guilty of theft of services when:"

> 3. With intent to obtain . . . subway . . . or any other public
> transportation service without payment of the lawful charge
> therefor, or to avoid payment of the lawful charge for such
> transportation service which has been rendered to him, he obtains
> or attempts to obtain such service or avoids or attempts to avoid
> payment therefor by force, intimidation, stealth, deception or

appeared before a criminal court judge and the court entered an Adjournment in Contemplation of Dismissal pursuant to New York Criminal Procedure Law § 170.55. (Id. ¶ 23.) While defendants assert that plaintiff accepted an Adjournment in Contemplation of Dismissal (Id. ¶ 23), plaintiff asserts that the transcript of the proceedings shows that he "kept protesting his innocence and never accepted an offer of Adjournment in Contemplation of Discharge" (Pl. 56.1 ¶ 23, Emengo Decl. Ex. L). On or about June 13, 2008, the criminal case against plaintiff was dismissed pursuant to the terms of his Adjournment in Contemplation of Dismissal. (Def. 56.1 ¶ 24.)

In response to a subpoena served by defendants upon MTA, the MTA produced certified records of (i) an MTA report showing that the same disability fare card recovered from plaintiff's person at the time of his arrest had been issued to plaintiff's wife, Vjollca Banushi; and (ii) the usage history for Vjollca's disability fare card showed that it was last used at the Lorimer Street Station at 4:18 p.m. on December 14, 2007. (Id. ¶¶ 33-35.) The disability fare card was taken from plaintiff at the time of his arrest, vouchered as arrest evidence, and not returned to him. (Id. ¶¶ 16-18.) The MTA report also shows that the other two regular priced fare cards

_____

mechanical tampering, or by unjustifiable failure or refusal to pay . . . . N.Y.P.L. § 165.15(3).

which defendants assert were recovered from plaintiff's person on December 14, 2007, were never used during December 2007. (Id. ¶¶ 37-40.)

The memo book belonging to Officer Palmer shows that another individual committed a transit-related offense on the same day as plaintiff. (Pl. Mem. at 17.) However, plaintiff identifies no testimony by Officers Palmer and Allen regarding this other individual's race or national origin, or whether the individual was arrested or prosecuted. (See id.; see also Def. Reply Mem. at 9-10.) Further, Officer Allen testified that the officers determine on a "case by case" basis whether to arrest or issue a Desk Appearance ticket for transit offenses. (Emengo Decl. Ex. I at 65-70.)[5]

Plaintiff filed the Amended Complaint in the instant action on November 5, 2008. (ECF No. 11, Amended Complaint ("Complaint" or "Compl.").) In his Complaint, plaintiff alleges that defendants falsely arrested and falsely imprisoned him, and thereafter maliciously prosecuted him. (Id.; see also Pl. 56.1 ¶ 1, Def. 56.1 ¶ 1.) Plaintiff also appears to allege an Equal Protection Clause violation, as well as various state law

---

[5]     Although plaintiff asserts in his motion papers that "Officer Allen testified that numerous cases of that similarity [sic] were encountered frequently and usually, they resulted in Desk Appearance tickets," any fair reading of Officer Allen's deposition testimony belies this statement. (See Emengo Decl. Ex. I, see also Def. Reply Mem. at 10-11 (discussing same).)

violations including assault and battery,[6] invasion of privacy,

and intentional infliction of emotional distress.[7]  Plaintiff

asserts in his Complaint that he has suffered emotional

distress, anxiety, and nightmares following the incident.  (Pl.

56.1 ¶ 41.)  The instant motion for summary judgment ensued.


**DISCUSSION**


**I. MOTIONS FOR SUMMARY JUDGMENT**

**A. Summary Judgment Standard**

A court may grant summary judgment only "if the

pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c)(2).  "A fact is

'material' for these purposes when it 'might affect the outcome

of the suit under the governing law.'"  Jeffreys v. City of New

---

[6]     Defendants construe plaintiff's complaint as alleging a claim of
excessive force (Def. 56.1 ¶ 1), but plaintiff denies any allegation of
excessive force "except in so far as placing plaintiffs two hands behind his
back at all times in handcuffs may be characterized as excessive force."
(Pl. 56.1 ¶ 1.)

[7]     To the extent plaintiff's Complaint appears to allege violations of
"Title VII section 704(a)," the claim is deficient on its face because a
Title VII claim cannot be sustained absent an employer-employee relationship
and the Complaint fails to allege any such relationship or any facts
suggesting such a relationship.  See Gulino v. N.Y. State Educ. Dep't, 460
F.3d 361, 370 (2d Cir. 2006)("the existence of an employer-employee
relationship is a primary element of Title VII claims").  Thus, as apparently
conceded by plaintiff through his failure to oppose defendants' motion as to
a Title VII claim, summary judgment is granted on that claim in favor of
defendants.

York, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Moreover, no
genuine issue of material fact exists "unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party.  If the evidence is merely
colorable, . . . or is not significantly probative, . . .
summary judgment may be granted."  Anderson, 477 U.S. at 249-50
(internal citations omitted).

The moving party carries the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  The court must construe
the facts in the light most favorable to the nonmoving party and
all reasonable inferences and ambiguities must be resolved
against the moving party.  Flanigan v. Gen. Elec. Co., 242 F.3d
78, 83 (2d Cir. 2001).  Nevertheless, the nonmoving party may
not rest "merely on allegations or denials" but must instead
"set out specific facts showing there is a genuine issue for
trial."  Fed. R. Civ. P. 56(e)(2).  Further, "the nonmoving
party must come forward with admissible evidence sufficient to
raise a genuine issue of fact for trial in order to avoid
summary judgment."  Jaramillo v. Weyerhaeuser Co., 536 F.3d 140,
145 (2d Cir. 2008) (citations omitted).

## B. Application

As a threshold matter, plaintiff's opposition addresses only defendants' arguments in connection with his claims of false arrest and imprisonment and equal protection, and, broadly interpreted, on the claims of malicious prosecution and assault and battery (or excessive force as construed by defendants). (_See generally_ Pl. Mem. and supporting documents.) Thus, although defendants moved for summary judgment on plaintiff's claims of intentional infliction of emotional distress and municipal liability, by neglecting to respond to defendants' arguments in his opposition it appears that plaintiff has withdrawn or abandoned these claims making them ripe for dismissal. See _Arias v. NASDAQ/AMEX Mkt. Group_, No. 00-CV-9827 (MBM), 2003 U.S. Dist. LEXIS 166, at *34 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); see also Local Civ. Rule 7.1 ("[A]ll oppositions [] [to a motion for summary judgment] shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default."). Nevertheless, in an abundance of caution, the Court

has considered on the merits the substance of plaintiff's claims on all grounds asserted in the Complaint.

### a. False Arrest and False Imprisonment – (Count Two)

Defendants move for summary judgment as to plaintiff's claims for false arrest and false imprisonment under both federal and state law on the grounds that there was probable cause for plaintiff's arrest. (Def. Mem. at 7-12.) Plaintiff counters that questions of fact regarding "the pertinent events and knowledge of the defendant police officers" prevent summary judgment on this claim. (Def. Mem. at 14.)

The Second Circuit has held that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."[8] Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted); see Singer, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances

---

[8]     The elements of a false arrest claim under section 1983 are substantially the same as the elements of such a claim under New York law and, thus, the analysis of plaintiff's federal and state claims is identical. See Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). In addition, the claims of false arrest and false imprisonment are also essentially the same under both state and federal law and, thus, those claims may be addressed together. See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852 (citations omitted). Significantly, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." Peterson v. Cnty. of Nassau, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing Pierson v. Ray, 386 U.S. 547, 555, (1967)).

Rather, in determining whether probable cause existed at the moment of arrest, the court must examine the totality of the circumstances and "consider the facts available to the officer at the time of the arrest." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (citation omitted); Calamia v. New York, 879 F.2d 1025, 1032 (2d Cir. 1989). Whether probable cause existed may be determinable as a matter of law where "there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." See Weyant, 101 F.3d at 852 (citations omitted). Where the existence of probable cause presents a dispute that is "factual in nature," it must be presented to a jury. See Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994). Defendants bear the burden of establishing that probable cause existed for the plaintiff's arrest. See Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003).

Although defendants focus considerable energy in their motion for summary judgment discussing the evidence tending to show that plaintiff did in fact use his wife's disability metro fare card on December 14, 2007 (see Def. Mem. at 10-12), this evidence, obtained after plaintiff's arrest, is irrelevant to the court's task in determining whether there is a disputed issue of material fact regarding the existence of probable cause at the time of plaintiff's arrest. Indeed, here, the crucial inquiry concerning plaintiff's false arrest and false imprisonment claims is not whether plaintiff actually used his wife's metro disability fare card, but whether Officers Palmer and Allen had probable cause at the time of the arrest to believe that plaintiff had illegally used the disability fare card and should be arrested. See, e.g., Coyle v. Coyle, 354 F. Supp. 2d 207, 211 (E.D.N.Y. 2005) (noting crucial inquiry is whether defendants had probable cause to believe that plaintiff committed a crime, not whether he actually committed a crime).

While defendants contend that no issue of material fact exists on the issue of probable cause in light of Officer Palmer's testimony that he observed plaintiff pass through the turnstile and saw a red light flash on the turnstile as plaintiff did so, defendants ignore plaintiff's contradictory sworn testimony that plaintiff was "alone" when he entered the subway turnstile and was waiting on the subway train platform

for ten minutes before he was approached by Officers Palmer and Allen. Accordingly, as plaintiff correctly points out, if Officer Palmer is believed, the defendant officers concededly had the requisite probable cause to effect plaintiff's arrest. (See Pl. Mem. at 14.) However, if plaintiff's account is believed, the jury could find that the officers could not have observed him entering the station and seen the flashing red light when he passed through the turnstile, and therefore under that scenario, the officers did not have probable cause to arrest plaintiff. (See id.) To resolve this issue thus requires a credibility determination by the fact-finder in weighing which account – Officer Palmer's or plaintiff's – should be believed. This need for a credibility determination renders this material issue of disputed fact incapable of resolution on summary judgment. See Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010) ("[A]s a general rule, a district court may not discredit a witness's deposition testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury.")

Because the record raises a material issue of fact as to whether Officer Palmer had knowledge of facts at the time of plaintiff's arrest supporting a finding of probable cause to arrest, defendants' motion for summary judgment on plaintiff's

false arrest and false imprisonment claims under state and federal law is denied.

### b. Assault and Battery – (Count One)

Defendants construe plaintiff as alleging a claim for excessive force, and move for summary judgment on that claim on the grounds that "plaintiff was never subjected to force and suffered no physical injuries" during his arrest. (Def. Mem. at 13-14.) In his opposition, plaintiff asserts that he did not raise a claim of excessive force "except in so far as placing plaintiffs [sic] two hands behind his back at all times in handcuffs may be characterized as excessive force." (Pl. 56.1 Stmt. ¶ 1.) However, in his Complaint, plaintiff raised claims of assault and battery under State law, and the court thus considers those claims here.

Under New York law, to recover damages for assault "there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact." Cotter v. Summit Sec. Servs., 14 A.D.3d 475, 475 (N.Y. App. Div. 2d Dep't 2005). "To recover damages for battery founded on bodily contact, a plaintiff must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." Johnson v. Suffolk Cnty. Police Dep't, 245 A.D.2d 340, 341 (N.Y. App. Div. 2d Dep't 1997). Contact during an unlawful arrest may give rise

to claims for assault and battery.  See Wylie v. Dist. Attorney of Cnty. of Kings, 2 A.D.3d 714, 718-19 (N.Y. App. Div. 2d Dep't 2003).

Here, because a genuine issue of fact exists as to plaintiff's false arrest and imprisonment claims, a concomitant issue of fact exists as to plaintiff's claim of assault and battery.  See Johnson, 245 A.D.2d at 441-42 (finding that police officer committed "battery when he touched plaintiff" because the touch occurred during an arrest that was unlawful). Therefore, defendants' motion for summary judgment as to plaintiff's claim for assault and battery under state law is denied.  See Wylie, 2 A.D.3d at 718-19 ("the questions of fact regarding whether the plaintiff's arrest was supported by probable cause also preclude summary judgment on the cause of action for assault and battery").

### c. Malicious Prosecution — (Count Four)

Defendants also move for summary judgment as to plaintiff's claim of malicious prosecution under federal or state law on the grounds that the claim cannot be sustained because plaintiff "accepted an Adjournment in Contemplation of Dismissal ("ACD")" to dispose of the charges against him.  (Def. Mem. at 12-13.)  Plaintiff asserts that an issue of material fact exists as to this claim because he asserts that he never "accepted" an ACD.  (Pl. 56.1 Stmt. ¶ 23.)

Under either federal or state law,[9] "the elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Savino, 331 F.3d at 72 (quoting Colon v. City of New York, 60 N.Y.2d 78, 82 (N.Y. 1983)); see also Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004) (citations omitted). Under New York law, an ACD is a "compromise" whereby a "criminal case is adjourned before the entry of a plea, based on the prosecutor's belief that there will ultimately be a dismissal of the accusatory instrument in the interest of justice." Id. at 287. Thereafter, absent any action by the prosecutor, the ACD results in the termination of the criminal case after a specified period of time. See N.Y. C.P.L. § 170.55.[10] However, it is well-settled that the

---

[9]     The elements of a malicious prosecution claim under Section 1983 are substantially the same as the elements of such a claim under New York law and, thus, the analysis of plaintiff's federal and state claims for malicious prosecution is identical. See Boyd, 336 F.3d at 75.

[10]    New York Criminal Procedure Law Section 170.55 provides, in pertinent part,

> 1.  Upon or after arraignment . . . and before entry of a plea of guilty . . . or commencement of a trial . . . the court may, upon motion of the people or the defendant and with consent of the other party . . . order that the action be "adjourned in contemplation of dismissal" . . .

> 2.  . . . if the case is not so restored [to the court's calendar upon motion of the people] within such six months or one year period, the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice . . .

> 8.  The granting of an adjournment in contemplation of dismissal shall not be deemed to be a conviction or an admission of guilt . . . N.Y.C.P.L. § 170.55.

termination of criminal proceedings resulting from the terms of
an ACD does not constitute a favorable termination for the
defendant for the purposes of malicious prosecution, "not
because the defendant has admitted guilt [by accepting the ACD],
but because [the ACD] is a bargained-for dismissal of the
criminal case." Rothstein, 373 F.3d at 287.

Here, there is no dispute that plaintiff's underlying
criminal case was resolved when the charges against him were
adjourned in contemplation of dismissal. (See Chen Decl. Ex.
O.) Indeed, the State court hearing transcript reveals that
plaintiff's own appointed counsel moved the court for an ACD on
plaintiff's behalf and in plaintiff's presence in open court.
(Emengo Decl. Ex. L.) However, plaintiff conclusorily alleges
that he "never accepted the offer of Adjournment of
Contemplation of Discharge" [sic] and that the hearing
transcript instead demonstrates that he "kept protesting his
innocence." (Pl. 56.1 Stmt. ¶ 23 (citing Emengo Decl. Ex. L).)
Despite his belated protestations that he did not "accept" the
ACD, plaintiff alleges no facts whatsoever regarding the steps,
if any, he took following the ACD proceeding (at which he was
present), to attempt to vacate the allegedly unwanted ACD and
reopen the underlying criminal proceedings against him as
permitted by New York law. See N.Y. C.P.L. § 170.55 (providing
that criminal proceedings underlying an ACD may be reopened

within a specified period of time before ultimately being dismissed finally and with prejudice pursuant to the terms of the ACD). Having now enjoyed the benefit of having the charges against him dismissed pursuant to the terms of the ACD, plaintiff may not now conclusorily allege that the ACD was imposed against his will. See, e.g., Matter of City of New York [Klondike Realty Corp.], 88 A.D. 611, 611 (N.Y. App. Div. 2d Dep't. 1981) ("having had the benefit of the contract, claimants may not now question its validity, for the agreement in no way contravenes public policy"). There is therefore no genuine issue of material fact as to whether plaintiff's criminal case was validly resolved by an ACD.

Having established that plaintiff's case was terminated by an ACD, his malicious prosecution claim must fail because plaintiff cannot satisfy the second element of a malicious prosecution claim, that the prosecution initiated against him terminated in his favor. The court therefore grants defendants' motion for summary judgment on plaintiff's malicious prosecution claims under both federal and state law.

### d. Equal Protection – (Count Three)

Plaintiff asserts in his Complaint that defendants' "racial profiling practices" towards "individuals of East [sic] European descent as persons predisposed to stealing subway rides" violated his "equal protection rights based on his race"

and caused him to be subjected to false arrest and false
imprisonment when "[p]ersons of other national origin and
descent . . . would not have be [sic] arrested in the manner in
which plaintiff was . . . ." (Compl. ¶¶ 21-24.) Defendants
construe plaintiff's allegations as asserting a claim under the
Equal Protection Clause and contend plaintiff has failed to show
that he was selectively prosecuted. (See Def. Reply Mem. at 7-
12.) Plaintiff contends that a material issue of fact exists as
to "defendants' animus in arresting plaintiff" and to "explain
the disparate treatment meted to plaintiff." (Pl. Mem. at 16.)

    The Equal Protection Clause "requires that the
government treat all similarly situated people alike." Cobb v.
Pozzi, 363 F.3d 89, 110 (2d Cir. 2004). Based on this general
requirement, a plaintiff may prevail on a selective prosecution
claim under the Equal Protection Clause by showing: "(1) [that]
the person, compared with others similarly situated, was
selectively treated; and (2) that such selective treatment was
based on impermissible considerations such as race, religion,
intent to inhibit or punish the exercise of constitutional
rights, or malicious or bad faith intent to injure a person."
Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir.
2004) (internal citations and quotations omitted). Yet, the
"mere failure to prosecute other offenders is not a basis for a
finding of denial of equal protection." Latrieste Restaurant v.

<u>Vill. of Port Chester</u>, 188 F.3d 65, 70 (2d Cir. 1999) (quoting
<u>LeClair v. Saunders</u>, 627 F.2d 606, 608 (2d Cir. 1980)).

Although plaintiff conclusorily alleges that he was
"subjected" to false arrest and imprisonment because of his
"East [sic] European descent" and that individuals of "other
national origin and descent" would not have received such
treatment (compl. ¶ 22), plaintiff has failed to present any
competent evidence of any alleged unequal treatment.  Plaintiff
relies on three sources of evidence – all of which are
inadequate – to support his Equal Protection claim.  (<u>See</u>
<u>generally</u> Pl. Mem. at 15-18.)  First, plaintiff alleges that an
entry in Officer Palmer's memo book indicates that the officer
observed another "individual" commit a transit-related offense
on the same day as plaintiff.  (<u>Id.</u> at 15; <u>see also</u> Emengo Decl.
Ex. H.)  Without further citation, plaintiff further asserts
that the memo book entry alone reveals that this unnamed
"individual" was not of plaintiff's national origin, and that
unlike plaintiff, this individual was not arrested but instead
received a "Desk Appearance Ticket."  (<u>Id.</u> at 15-17.)  At the
outset, the court notes that this evidence is inadmissible
hearsay.  Moreover, as defendants correctly point out, plaintiff
offers no evidence as to that unnamed individual's race or
national origin, whether that individual was arrested, or to
what extent that individual was prosecuted.  Plaintiff's

conclusory and speculative allegations based upon this single
memo book entry thus fail to raise a material issue of fact
precluding summary judgment.  <u>Jaramillo</u>, 536 F.3d at 145
("nonmoving party must come forward with admissible evidence
sufficient to raise a genuine issue of fact for trial in order
to avoid summary judgment") (internal citations omitted).
Moreover, even assuming that this unidentified individual had a
different national origin from plaintiff and was not prosecuted,
as noted previously the mere failure to prosecute another "is
not a basis for a finding of denial of equal protection."
<u>Latrieste</u>, 188 F.3d at 70.

        Second, plaintiff alleges that "Officer Allen
testified that numerous cases of that similarity [sic] were
encountered frequently and usually, they resulted in Desk
Appearance Tickets." (Pl. Mem. at 17.)  However, plaintiff's
characterization of Officer Allen's testimony is misleading at
best.  Contrary to plaintiff's assertions, instead of testifying
that transit violations similar to plaintiff's "usually"
resulted in Desk Appearance tickets, during her deposition
Officer Allen repeatedly and consistently refused to make such a
characterization,[11] and even corrected plaintiff's counsel when

---

[11]    For instance, Officer Allen stated more than once that she "can't
answer" how many transit infractions result in arrests versus summons (Emengo
Decl. Ex. I at 65:22, 66:4), and further testified that the decision of
whether to issue a summons or a Desk Appearance Ticket for a transit

he misstated Officer Allen's testimony. (See, e.g., Emengo Decl. Ex. I at 69:12-14 ("Q: . . . You have also told us that you usually would give summons. A: No.").) Officer Allen's deposition transcript thus belies plaintiff's characterization of the evidence and therefore fails to support his claim that a material issue of fact exists on his equal protection claim.

Third and finally, to support his equal protection claim plaintiff relies on the allegation that in the course of his arrest defendants "mocked [plaintiff's] country of origin Albania, and asked if people stole train rides there." (Pl. Mem. at 15.) Plaintiff further asserts that "the pertinent facts are disputed" because Officer Palmer denies disparaging plaintiff's national origin. (Pl. Mem. at 15-16.) However, the issue of whether Officer Palmer made such a remark is immaterial to plaintiff's equal protection claim because such statements, without more, cannot give rise to a constitutional violation for purposes of section 1983 liability. See Harris v. Lord, 957 F. Supp. 471, 475 (S.D.N.Y. 1997) (internal quotation omitted) ("The law is clear that although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.") (internal citation and quotation omitted). Accordingly,

---

infraction must be made "on [sic] case by case scenario" (id. at 67:10-11, see also id. 68:20-23).

plaintiff's third evidentiary basis for an equal protection claim also fails to raise a genuine issue of material fact.

Thus notwithstanding plaintiff's conclusory allegations and his speculative reliance on three pieces of evidence which are respectively ambiguous, contradictory, or immaterial, plaintiff fails to present any reliable evidence to support his claim such as "arrest records, data, statistical evidence, or other information from which any pattern of racially disparate" subway enforcement policies could be inferred. See Jones v. J.C. Penny's Dep't Stores, Inc., 317 F. App'x 71, 74 (2d Cir. 2009). Plaintiff's failure to adduce any evidence as to whether he was treated differently from any individual – let alone any similarly situated individual – is fatal to his equal protection claim. See Jackson v. Mann, 196 F.3d 316, 321 (2d Cir. 1999) (summarily concluding that equal protection claim fails where plaintiff "presented no evidence whatsoever that he was treated differently from [other] similarly situated" individuals). In this evidentiary void, there is no genuine issue of material fact requiring a trial on plaintiff's Equal Protection claim because insufficient evidence exists for any reasonable jury to conclude that defendants profiled plaintiff based upon his Eastern European descent in violation of the Equal Protection Clause. See Anderson, 477 U.S. at 252 (finding "scintilla of evidence" insufficient to

defeat summary judgment motion). Defendants' motion for summary judgment on plaintiff's Equal Protection claim is therefore granted.

### e. Invasion of Privacy — (Count Five)

Plaintiff's Complaint alleges that defendants committed the tort of "intrusion of privacy." (Compl. ¶¶ 1, 28-30.) Defendants did not move for summary judgment as to this claim for relief, (see generally Def. Mem.), therefore the court declines to *sua sponte* consider summary judgment for this cause of action. To the extent defendants moved for summary judgment on the Complaint in its entirety, defendants' motion for summary judgment as to this claim is denied without prejudice. Upon application and with leave of the court, defendants may file a supplemental memorandum at a later date addressing any basis for summary judgment as to this claim.

### f. Intentional Infliction of Emotional Distress — (Count Six)

Plaintiff's Complaint appears to include a claim under state law for intentional infliction of emotional distress. (Compl. ¶¶ 31-33.) Defendants move for summary judgment on this claim contending that plaintiff's "trivial" complaints cannot sustain a claim under New York law because the conduct complained of was not "extreme and outrageous" and defendants did not have the "intent to cause [plaintiff] severe emotional

distress." (Def. Mem. at 23.) Plaintiff failed to oppose defendants' arguments, and thus appears to have also abandoned this claim. See, e.g., Taylor v. City of N.Y., 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). This claim also fails on the merits.

To establish a claim for intentional infliction of emotional distress under New York law, the plaintiff must show: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Margrabe v. Sexter & Warmflash, P.C., 353 F. App'x. 547, 550 (2d Cir. 2009) (citation omitted). This standard is "rigorous, and difficult to satisfy," and New York courts have repeatedly rejected claims where the "alleged conduct was not sufficiently outrageous enough." See, e.g., Howell v. New York Post Company, Inc., 81 N.Y.2d 115, 122 (N.Y. 1993) (collecting cases). Thus, in New York, a claim for intentional infliction of emotional distress only lies where the conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." <u>Howell</u>, 81
N.Y.2d at 122 (citation omitted); <u>see also</u> <u>Margrabe</u>, 353 F.
App'x. at 550.

As a matter of law, the factual allegations here
plainly do not meet this standard. Plaintiff at most alleges
that following his arrest, defendants stated "disparaged"
(compl. ¶ 8) and "mocked" his country of country of birth,
Albania, and asked if people stole train rides there (pl. mem.
at 15), thereby offending his national origin and heritage.
This behavior cannot meet the rigorous standard for "extreme and
outrageous" conduct under the first element of plaintiff's
intentional infliction of emotional distress claim. There is
thus absolutely no evidence in the record before the court from
which "a fair-minded trier of fact could reasonably conclude
that the conduct of these defendants constitutes either extreme
or outrageous conduct." <u>Kramer v. City of New York</u>, No. 04-CV-
106 (HB), 2004 U.S. Dist. LEXIS 21914 at *29 (S.D.N.Y. Nov. 1,
2004).

Accordingly, summary judgment is granted in
defendants' favor dismissing plaintiff's claim for intentional
infliction of emotional distress.

### g. Qualified Immunity

Individual defendant Officers Allen and Palmer
(together, the "officer defendants") also contend that they are

immune from liability for plaintiff's arrest and prosecution under a theory of qualified immunity. Plaintiff again failed to respond, but summary judgment is precluded.

Qualified immunity will shield a defendant officer from liability for civil damages either if that officer's actions did not violate clearly established law, or if it was objectively reasonable for the defendant to believe that his action did not violate such law. See, e.g., Anderson v. Creighton, 483 U.S. 635, 641 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982); see also Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001). The standard for objective reasonableness is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. Malley v. Briggs, 475 U.S. 335, 341 (1986).

Here, because it is well-settled that the right to be free from unlawful arrest and imprisonment is a clearly established right (see Cook v. Sheldon, 41 F.3d 73, 77 (2d Cir. 1994)), the officer defendants may be found entitled to qualified immunity only if the officers actually had probable cause to arrest plaintiff for a transit infraction or if it was objectively reasonable for the officers to believe they had probable cause for that arrest. However, as discussed above, viewing the evidence most favorably to plaintiff, and drawing all reasonable inferences in plaintiff's favor, plaintiff has

raised a genuine issue of material fact as to whether the
officer defendants had probable cause to arrest plaintiff.
Similarly, the factual question of whether or not Officer Palmer
observed plaintiff passing through the turnstile upon entering
the subway system also prevents the court from concluding, as a
matter of law that arguable probable cause existed and that the
officer defendants are entitled to qualified immunity.  See
Cerrone, 246 F.3d at 202.

Thus, under the present record, the disputed issues of
fact preclude summary judgment on the issue of qualified
immunity.

### h. Municipal Liability

Defendants also moved for summary judgment on
plaintiff's claims against the City and apparently conceding the
merits of defendants' arguments, plaintiff failed to respond.
(See Def. Mem. at 20-21; see generally Pl. Mem.)  Thus, the
court treats this claim as abandoned.  Moreover, even if
plaintiff intended to proceed on his claim of municipal
liability, the court finds that summary judgment on this claim
is appropriate because plaintiff has proffered no evidence in
support of such a claim that would survive summary judgment.

A municipality may only be liable for constitutional
claims under section 1983 if the alleged offending conduct was
undertaken pursuant to "a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by

[the municipal] officers[,] . . . [or] governmental 'custom'

even though such a custom has not received formal approval

through the . . . [municipality's] official decisionmaking [sic]

channels." Monell v. Dep't of Soc. Servs. of City of New York,

436 U.S. 658, 690 (1978); Patterson v. County of Oneida, 375

F.3d 206, 226 (2d Cir. 2004). Yet, it is well-settled that

municipal liability under section 1983 cannot be based on a

theory of *respondeat superior*. See, e.g., Goldberg v. Town of

Rocky Hill, 973 F.2d 70, 72 (2d Cir. 1992); Monell, 436 U.S. at

690-91.

To establish the existence of a municipal policy or

custom, the plaintiff must show:  (1) the existence of a formal

policy which is officially endorsed by the municipality; (2)

actions taken or decisions made by municipal officials with

final decision making authority, which caused the alleged

violation of plaintiff's civil rights; (3) a practice so

persistent and widespread that it constitutes a custom of which

constructive knowledge can be implied on the part of the

policymaking officials; or (4) a failure by policymakers to

properly train or supervise their subordinates, amounting to

"deliberate indifference" to the rights of those who come in

contact with the municipal employees. Moray v. City of Yonkers,

924 F. Supp. 8, 12 (S.D.N.Y. 1996); <u>Davis v. Lynbrook Police</u>
<u>Dep't</u>, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).

Here, plaintiff has failed to even allege, let alone
identify or adduce any evidence whatsoever that would indicate,
or allow an inference of, the existence of either any policy,
practice or custom, formal or otherwise, or any act that may
fairly be said to represent official policy, connected to the
alleged unconstitutional acts of the individual defendant
officers.[12] Accordingly, summary judgment must be granted in
defendants' favor on the <u>Monell</u> claim.


## II.   MOTION TO OVERRULE DISCOVERY ORDER

In a separate filing, defendants timely object to
Magistrate Judge James Orenstein's August 25, 2009 Order denying
defendants' motion for reconsideration of his August 3, 2009
ruling and further articulating the basis for that August 3
ruling (together, the "Discovery Order").[13] (<u>See</u> ECF Nos. 30-1,

---

[12]    The sole allegation regarding any policy or custom appearing in
plaintiff's Complaint appears in connection with plaintiff's equal protection
claim (compl. ¶ 22), which is dismissed for the reasons discussed above.
Similarly, plaintiff's conclusory assertion that "an unlawful policy of
profiling individuals of East [sic] European descent as persons pre-disposed
to stealing subway rides" fails to raise a genuine issue of material fact as
to <u>Monell</u> liability for the same reasons discussed above.

[13]    A party must file objections to a magistrate judge's order within
fourteen days of being served with a copy.  <u>See</u> Fed. R. Civ. P. 72(a).
Because here defendants' motion for reconsideration tolled the period for
timely objections to Judge Orenstein's original August 3 Order, the court
construes defendants' instant motion as an objection to the underlying August
3 Order and the August 25 Order denying reconsideration.  <u>See, e.g.</u>, <u>Norex</u>
<u>Petroleum Ltd. v. Access Indus., Inc.</u>, No. 02-CV-1499 (LTS), 2003 U.S. Dist.

Order dated 8/25/09, 30-2, Order dated 8/3/09.)  The Discovery

Order awarded plaintiff reasonable costs, including attorneys

fees, arising from plaintiff's litigation of a motion to compel

defendant's production of a video recording (ECF No. 18) on the

grounds that defendants' counsel unnecessarily "opposed the

motion on the merits rather than making a factual inquiry that

would have revealed that the recording at issue had never

existed and that the matter was therefore moot."  (See 8/25/10

Order at 3.)

### A. Standard of Review

A district court may set aside a magistrate's judge's

order concerning non-dispositive matters such as discovery

orders only if the order is "clearly erroneous or contrary to

law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); see also

Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d

Cir. 1990) (finding that matters involving pretrial discovery

are generally considered "'nondispositive' of the litigation"

and thus are subject to the "clearly erroneous or contrary to

law standard" on review by a district court).  An order is

"clearly erroneous only when the reviewing court[, based] on the

entire evidence[,] is left with the definite and firm conviction

LEXIS 13725, at *2-4 (S.D.N.Y. Aug. 7, 2003) ("courts in this District have
found that, during the pendency of a motion for reconsideration before a
magistrate judge, the time for filing an objection to the District Court is
tolled") (collecting cases).

that a mistake has been committed." <u>Deveer v. Gov't Employees</u>
<u>Ins. Co.</u>, No. 07-CV-4437, 2008 U.S. Dist. LEXIS 74429, at *28
(E.D.N.Y. Sept. 26, 2008) (quoting <u>Weiss v. La Suisse</u>, 161 F.
Supp. 2d 305, 320-21 (S.D.N.Y. 2001) (internal quotation marks
omitted)).  An order is "contrary to law when it fails to apply
or misapplies relevant statutes, case law[,] or rules of
procedure." <u>Id.</u> (internal quotation marks omitted).

**B. Application**

Here, defendants plainly fail to satisfy this exacting
standard.  Having carefully considered defendants' objections as
well as the factual and legal bases for Judge Orenstein's
thoroughly detailed and well-reasoned discovery order, the court
overrules defendants' objections and declines to modify or set
aside any portion of Judge Orenstein's 9/3/09 Order.  Fed. R.
Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants' motion for
summary judgment is granted in part and denied in part.
Specifically, defendants' motion for summary judgment as to
plaintiff's claims against the individual defendants for assault
and battery (Count One) and false arrest and false imprisonment
(Count Two) is denied.  In addition, to the extent made,
defendants' motion for summary judgment as to plaintiff's claim

for intrusion of privacy (Count Five) is denied without prejudice. Defendants' motions for summary judgment as to plaintiff's claims of equal protection (Count Three), malicious prosecution (Count Four), and intentional infliction of emotional distress (Count Six), is granted. Moreover, defendants' motion for summary judgment as to plaintiff's claim of municipal liability against the City of New York is granted, and the caption is hereby amended to delete this party from the suit. The Clerk of the Court is respectfully requested to enter judgment accordingly. Finally, defendants' objection to Judge Orenstein's discovery order is denied.


**SO ORDERED.**

Dated: Brooklyn, New York
      October 15, 2010


                           _____/s/_____
                           **KIYO A. MATSUMOTO**
                           United States District Judge
                           Eastern District of New York